<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| LYNNANN VORHEES, | : |
| Plaintiff, | : |
| v. | : Civ. Action No. 16-8208-BRM-LHG |
| INDU TOLIA, *et al.*, | : |
|  | : **OPINION** |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendants Indu Tolia's ("Tolia") and Care LLC (individually, "Care"; collectively with Tolia, "Moving Defendants") Amended Motion to Dismiss *pro se* Plaintiff Lynnann Vorhees's ("Plaintiff") claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 17); (2) Plaintiff's Cross-Motion to Deny Moving Defendants' Amended Motion to Dismiss (ECF No. 18); and (3) Plaintiff's Motion for Entry of Default Judgment Against Defendants Adam Newman ("Newman") and Augthat LLC (individually, "Augthat"; collectively with Newman, "Default Defendants") (ECF No. 23). Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth herein, Tolia and Care's Motion to Dismiss is **GRANTED**. Plaintiff's Cross-Motion to Deny Moving Defendants' Amended Motion to Dismiss is **DENIED**. Plaintiff's for Entry of Default Judgment is **DENIED**.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

For the purposes of these Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true, considers any document "*integral to or explicitly relied upon* in the complaint," and draws all inferences in the light most favorable to Plaintiff. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

This matter arises from a dispute over misappropriation of trade secrets related to Plaintiff's business dealings with Tolia and Newman, and with the corporate entities the parties created. (ECF No. 1 §§ I, II.) Plaintiff, a Pennsylvania resident, is a developer and distributor/supplier of augmented reality[1] software for use in education. (*Id.* ¶¶ 6, 9.) Plaintiff was the president of Pear Enterprises Inc. ("Pear"), a now-defunct business involved in the "development of a wearable display and App to assist individuals suffering with visual disabilities." (*Id.* ¶¶ 9, 20.) In October 2013, Plaintiff met Tolia, a New Jersey resident, at a meeting of an augmented reality organization in New York. (*Id.* ¶¶ 7, 20.) Around October 18, 2013, Tolia began working for Pear and continued to do so until around December 29, 2014. (*Id.* ¶ 12.) Pursuant to her work with Pear, Tolia agreed to sign a nondisclosure agreement (the "NDA").[2] (*Id.* ¶ 15.)

In November 2013, Plaintiff and Tolia attended the New Jersey Education Association ("NJEA") Convention in Atlantic City, New Jersey, where they maintained an exhibit booth regarding Pear's augmented reality. (*Id.* ¶ 22.) Newman, who was attending the convention, visited

---

[1] "Augmented reality is a concept that uses technology to combine the view of a real-world environment with certain elements being *augmented* (or supplemented) by computer-generated sensory input . . . ." (Br. in Supp. of Defs.' Mot. to Dismiss (ECF No. 17-7) at 11 n.5.)

[2] Plaintiff did not attach a copy of the NDA to the Complaint, but she attached it to her Cross-Motion. (*See* ECF No. 18-3 at 19.)

2

the Pear exhibit booth and spoke with Plaintiff and Tolia about using augmented reality at the tutoring centers he ran. (*Id.* ¶¶ 22-24.) Three weeks after the NJEA Convention, Plaintiff and Tolia visited one of Newman's tutoring centers to discuss a possible collaboration through which Pear would create products for Newman's tutoring centers. (*Id.* ¶¶ 25-26.) Plaintiff asked Newman to sign a nondisclosure agreement, but Tolia and Newman said it was unnecessary and "would not hold up in a court of law." (*Id.* ¶ 26.) Tolia continued the meeting with Newman, and Plaintiff felt she was being coerced into the agreement. (*Id.*)

On December 29, 2013, Plaintiff, Tolia, and Newman formed an entity called Virtuality LLC ("Virtuality"), in which all three were equal partners. (*Id.* ¶ 31.) Tolia asked Plaintiff to relocate to New Jersey to work on developing the business. (*Id.*) Tolia agreed to pay Plaintiff $2000 per month (*Id.*) Tolia and Plaintiff also opened a checking account for Pear, which was used to pay Plaintiff's monthly salary. (*Id.* ¶ 32.) Tolia and Newman then told Plaintiff each of the three needed to contribute $5000 to Virtuality. (*Id.* ¶ 34.) Plaintiff did not have the money, but she obtained $12,000 from her parents and gave that money to Tolia and Newman.[3] (*Id.* ¶ 34.)

In January of 2014, Plaintiff, Tolia, and Newman sought investors for Virtuality. (*Id.* ¶¶ 36-37.) Newman arranged a product demonstration with Sussman Publishing. (*Id.* ¶¶ 37.) Plaintiff was prepared to attend, but Newman told her it was not necessary and attended the meeting with Tolia. (*Id.*) Newman later told Plaintiff he had secured an investor that was willing to invest $250,000 contingent on Plaintiff, Tolia, and Newman each contributing $250,000. (*Id.* ¶ 38.) Plaintiff asked Newman about the investor, and Newman said only that he would handle all communications with the investor. (*Id.*) Plaintiff did not have the means to contribute $250,000,

---

[3] The Complaint is not clear as to why Plaintiff contributed $12,000 instead of $5000, other than to indicate the payment was "based on the projected business plan with the promise of repayment." (ECF No. 1 ¶ 34.)

so she reached an agreement with Tolia and Newman through which she would receive annual compensation of $50,000 plus a five percent "royalty off profits." (*Id.* ¶ 39.) In exchange, Plaintiff would sign her shares in Virtuality over to the investor, and she would retain the option to buy back the shares "if and when the opportunity presented itself." (*Id.*) On February 1, 2014, Tolia and Newman told Plaintiff the shares in Virtuality had no value because the company had no product or sales. (*Id.* ¶ 40.) Tolia and Newman offered Plaintiff $100 for her shares in order for the stock sale/surrender to be legal. (*Id.*) Plaintiff felt coerced into the sale of her shares, because she believed the investor would withdraw from the deal if she did not comply. (*Id.*) Despite this, on January 29, 2014, Plaintiff executed a Stock Surrender Agreement (the "Stock Agreement").[4]

On February 20, 2014, Tolia informed Plaintiff that Newman had misappropriated money from Virtuality to purchase a personal vehicle. (*Id.* ¶ 41.) Tolia also said Virtuality's investors had frozen the entity's funds and the offices would be closed until further notice. (*Id.*) Finally, Tolia told Plaintiff she was leaving Virtuality. (*Id.*) On February 26, 2015, Tolia contacted Plaintiff and told her "all had been worked out." (*Id.* ¶ 42.) Tolia assured Plaintiff the company, Care, would be fine. (*Id.*) Plaintiff had never heard of Care and asked if Tolia meant to say "Pear," and Tolia answered "No, [Care], our new company." (*Id.*) This was the first time Plaintiff had heard of Care, and she later learned Tolia, who was the entity's sole proprietor, had established Care on February 14, 2014. (*Id.*) Tolia told Plaintiff she would pay Plaintiff for work performed, because Plaintiff

---

[4] Plaintiff did not include the Stock Agreement with her Complaint, but Moving Defendants filed a copy with her motion.(ECF No. 17-2.) Moving Defendants also filed a copy of a February 1, 2015 Employment Agreement (the "Employment Agreement") between Plaintiff and Virtuality. (ECF No. 17-3.) The Court considered these documents as they are "*integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

4

had not been paid since December 2013. (*Id.* ¶ 44.) Tolia gave Plaintiff a check for $2500, but she informed Plaintiff she did not have the funds to pay the $4100 per month that was owed. (*Id.* ¶ 45.)

In March 2014, Plaintiff, at Tolia's request, leased an apartment closer to Tolia's New Jersey office.[5] (*Id.* ¶ 46.) On April 2, 2014, Plaintiff and Tolia met with a potential development partner, Brian Hamilton of Daqri, an augmented reality software developer. (*Id.* ¶ 47.) Tolia presented Plaintiff's augmented reality concepts during the meeting. (*Id.*) On April 3, 2014, Tolia told Plaintiff investors who were interested in Care would not honor Plaintiff's contract with Virtuality and may require Plaintiff take a pay cut. (*Id.* ¶ 48.) Plaintiff asked Tolia to contact the investors to clarify Plaintiff's status with Care. (*Id.* ¶ 49.) On April 7, 2014, Plaintiff asked Tolia whether the investors had provided any additional information regarding Plaintiff's status, and Tolia said the meeting with the investors had been cancelled. (*Id.*) Tolia told Plaintiff not to go into the office and said she would contact Plaintiff. (*Id.*). On April 12, 2014, Tolia informed Plaintiff the investors were not interested in meeting with Plaintiff and would not honor Plaintiff's employment contract. (*Id.* ¶ 50.)

Plaintiff later learned Tolia had requested access to Pear's server, to which only Plaintiff had access and control. ((*Id.* ¶ 51.) In June 2014, Plaintiff attempted to have Tolia sign a "re-sellers agreement" for Pear and Care, but Tolia never signed the agreement. (*Id.* ¶ 52.) Despite the fact Tolia did not sign the agreement, she continued to use Pear products at trade shows and in Care marketing materials. (*Id.*) Plaintiff then learned Tolia had solicited support and endorsements from "Braid [sic] Waid" ("Waid") and Drew Mincok ("Minock"), who are teachers and augmented reality experts who had served as advisors to Pear. (*Id.* ¶ 53.) Waid and Minock did not know

---

[5] Plaintiff's allegations regarding the move are inconsistent, as she alleges Tolia encouraged her to move on March 3, 2015, but that she "signed a rental agreement for a move in date on March 1, 2014." (ECF No. 1 ¶ 46.)

5

Plaintiff was no longer working with Tolia when Tolia reached out to them. (*Id.*) Tolia continued to use Pear's content in demonstrations to potential clients. (*Id.* ¶ 54.) Plaintiff demanded Tolia remove all references to Pear from Tolia's website, videos, and LinkedIn and Facebook pages, but Tolia did not comply until December 2014. (*Id.* ¶ 55.)

In April 2014, Plaintiff learned Newman also formed his own company, Augthat, and was selling educational materials and other products derived from materials Plaintiff developed for Pear. (*Id.* ¶ 56.) In November 2014, Plaintiff contacted Newman, who told her from the beginning of their relationship Tolia wanted to force Plaintiff out of the company. (*Id.* ¶ 57.) Newman also said there were never any actual investors but were fabricated as a means to drive Plaintiff from the company. (*Id.*) Newman told Plaintiff Augthat products were used at ninety schools. (*Id.*) In October 2015, Plaintiff learned from Augthat's Facebook page that Newman partnered with Let's Go Learn, an education company to which Plaintiff, Tolia, and Vorhees had presented Plaintiff's technology in December 2013. (*Id.* ¶¶ 30, 58.) Both Tolia and Newman have sold products based on Plaintiff's intellectual property, which has led Plaintiff to lose her livelihood and to the demise of Pear. (*Id.* ¶ 60.)

On November 3, 2016, Plaintiff filed the Complaint. (ECF No. 1.) Plaintiff asserts ten claims: (1) a claim against all Defendants for violations of the New Jersey Trade Secret Act ("NJTSA"), N.J.S.A. 56:15-1, *et seq.* (Count One); (2) a claim against Tolia and Newman for breach of contract (Count Two); (3) a claim against Tolia and Newman for fraud(Count Three); (4) a claim against all Defendants for breach of confidence (Count Four); (5) a claim against all Defendants for conversion (Count Five); a claim against all Defendants for trespass to chatels (Count Six); (7) a claim against all Defendants for unlawful interference with prospective business advantage (Count Seven); (8) a claim against all Defendants for unfair competition (Count Eight);

6

(9) a claim against all Defendants for breach of the implied covenant of good faith and fair dealing (Count Nine); and (10) a claim against all Defendants for civil conspiracy (Count Ten).

On February 6, 2017, Plaintiff filed a Request for Default against Newman. (ECF No. 13.) On the same day, the Clerk entered default as to Newman for failure to plead or otherwise defend. On August 4, 2017, Plaintiff filed a Motion for Entry of Default Judgment against Newman. (ECF No. 23.)

On February 28, 2017, Tolia and Care moved to dismiss the claims against them, pursuant to Rule 12(b)(6). (ECF No. 14.) On March 1, 2017, Tolia and Care filed moved to amend their motion to dismiss (ECF No. 16), which the Court granted on March 2, 2017. On March 2, 2017, Tolia and Care filed the Amended Motion to Dismiss pursuant to Rule 12(b)(6). (ECF No. 17.) Plaintiff opposes the Motion by way of a Cross-Motion to Deny Defendant's Motion to Dismiss. (ECF No. 18.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

#### A. The Stock Surrender Agreement and Employment Agreement

Moving Defendants argue Plaintiff's claims are precluded, as well as proven false, by the Stock Agreement and the Employment Agreement. (ECF Nos. 17-2 and 17-3.)

##### 1. The Stock Surrender Agreement

The Stock Agreement provides, in relevant part:

8

> **WHEREAS,** [Plaintiff] acknowledges that [the] market value of shares of [Virtuality] is zero dollars due to absence of any[] revenues, business or any Intellectual Property Rights, whatsoever . . . .
>
> **WHEREAS,** [Plaintiff] has now proposed and expressed her desire to relinquish her entire ownership in [Virtuality]; and
>
> **WHEREAS,** [Tolia and Newman] have accepted [Plaintiff]'s proposal to relinquish her ownership in [Virtuality] for consideration . . . .

(ECF No. 17-2 at 2.) The Stock Agreement also provides Plaintiff would receive $100 in consideration for relinquishing her shares. (*Id.* at 3.) The Stock Agreement further provides:

> **EACH OF THE PARTIES HERETO HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS AGREEMENT, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. EACH PARTY HERETO FURTHER REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.**

(*Id.* at 7-8.)

Plaintiff alleges she signed the Stock Agreement on February 1, 2014, because she "was informed by [Tolia and Newman] that shares in [Virtuality] had no value." (ECF No. 1 ¶ 40.) Plaintiff alleges she "felt coerced into selling her stock on the basis that if she did not do so, the investor would pull out." (*Id.*) In her Cross-Motion, Plaintiff does not dispute the authenticity of

the Stock Agreement, which Moving Defendants attached to their Motion to Dismiss. (*See* ECF No. 18.)

Even if Plaintiff had been coerced into signing the Stock Agreement because she feared the loss of an investor, the clause waiving the parties' right to file a lawsuit would apply. *See SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 274 (3d Cir. 2013). The Third Circuit has held a claim of coercion "is a challenge to the validity (rather than the formation) of [a contract]." *Id.* An arbitration clause is enforceable even in the face of economic duress as long as the party alleging economic duress had the capacity to enter into a contract. *Id.* Here, Plaintiff does not allege that her "capacity to consent was so diminished that no contract was ever formed or that [she] was necessarily unable to consent" to the contract. *Id.* The Court finds, therefore, the Stock Agreement precludes Plaintiff from asserting her claims in this Court.

The Court finds the Stock Agreement bars Plaintiff's claims. Therefore, Moving Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's Cross-Motion to Deny Moving Defendants' Motion is **DENIED**.

### B. The Employment Agreement

Moving Defendants also seek dismissal of the claims against them on the ground the Employment Agreement precludes Plaintiff from asserting her claims in this Court. (ECF No. 17-7 at 6.) The Employment Agreement includes an arbitration clause, which provides "[a]ny dispute arising under or related to [Plaintiff]'s employment with [Virtuality] shall be resolved exclusively by arbitration in the state of New Jersey." (*See* ECF No. 17-2 ¶ 16.) Plaintiff refutes Moving Defendants' reliance on the arbitration clause by arguing the Employment Agreement is invalid because "it was fraudulent in its intent and formation." (Br. in Supp. of Pl.'s Cross-Mot. (ECF No. 18-1) at 8.)

10

"The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies favoring arbitration." *Atalese v. U.S. Legal Servs. Group, L.P.*, 99 A.3d 306, 311-12 (N.J. 2014) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).[6] "[A]rbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *In re Mintze*, 434 F.3d 222, 229 (3d Cir. 2006) (quoting 9 U.S.C. § 2). "A court has the power to stat a proceeding if it determines that an issue falls under an applicable arbitration clause." *Id.* (citing 9 U.S.C. § 3). "[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted). "Unless the arbitration provision itself was a product of fraud, the election [to resolve disputes in arbitration] should be enforced." *Van Syoc v. Walter*, 613 A.2d 490, 491 (N.J. Super. Ct. App. Div. 1992).

Here, the arbitration clause would bar Plaintiff's claims for the same reasons the Stock Agreement bars her claims. *See SBRMCOA, LLC*, 707 F.3d at 274. Plaintiff does not allege she lacked the capacity to contract when she signed the Employment Agreement. *See id.* Plaintiff does not allege she did not have an opportunity to read the Employment Agreement nor that she did not understand the arbitration clause. *See Ohai v. Verizon Commc'ns, Inc.*, No. 05-729, 2005 WL 6563176, at *5 (D.N.J. Oct. 28, 2005). To the extent Plaintiff argues the Employment Agreement in general, as opposed to the arbitration clause itself, is the product of fraud, she must make that argument to an arbitrator. *See Van Syoc*, 613 A.2d at 491.

---

[6] The Employment Agreement provides its terms must be construed according to New Jersey law. (ECF No. 17-3 ¶ 18.)

11

The Court finds the Employment Agreement bars Plaintiff's claims. Therefore, Moving Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's Cross-Motion to Deny Moving Defendants' Motion is **DENIED**.

### C. Plaintiff's Motion for Default Judgment

As the Court finds Plaintiff's claims must be asserted before an arbitrator, the Court does not have subject matter jurisdiction over the lawsuit. *Organizational Strategies, Inc. v. Feldman Law Firm LLP*, 604 Fed. App'x 116, 118 (3d Cir. 2015); *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 207(3d Cir. 1985); *Daly v. Norfolk Southern R. Co.*, No. 09-4609, 2011 WL 2559533, at *1 (D.N.J. June 27, 2011); *Thompson v. Nienaber*, 239 F. Supp. 2d 478, 482 (D.N.J. 2002).

Therefore, Plaintiff's Motion for Default Judgment is **DENIED AS MOOT** and the Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

### IV. CONCLUSION

For the reasons set forth above, Moving Defendants' Motion to Dismiss (ECF No. 17) is **GRANTED**. Plaintiff's Cross-Motion to Deny Moving Defendants' Motion to Dismiss (ECF No. 18) is **DENIED**. Plaintiff's Motion for Default Judgment (ECF No. 23) is **DENIED AS MOOT**. The Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. An appropriate Order will follow.

**Date: January 30, 2018**                                    */s/ Brian R. Martinotti*
                                                                                            **HON. BRIAN R. MARTINOTTI**
                                                                                           **UNITED STATES DISTRICT JUDGE**