<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                              :
LYNNANN VORHEES,                              :
                                              :
                          Plaintiff,          :
                                              :      Case No. 3:16-cv-8208-BRM-LHG
                 v.                           :
                                              :
INDU TOLIA, *et al.*,                         :
                                              :                **OPINION**
                                              :
                          Defendants.         :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Indu Tolia's ("Tolia") and Care LLC's (individually, "Care"; collectively with Tolia, "Defendants") Motion to Dismiss *pro se* Plaintiff Lynnann Vorhees's ("Vorhees") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 43). Vorhees opposes the Motion. (ECF No. 44.) Vorhees also filed an Amended Response.[1] (ECF No. 45.) Defendants did not file a Reply. Having reviewed the filings submitted in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons stated below, Defendants' Motion to Dismiss is **DENIED in part** and **GRANTED in part**.

---

[1] Plaintiff explained the Amended Response reflected the correction of various spelling and other so-called clerical errors, and she requested that the Amended Response be recognized as the "primary" document for her opposition to the Motion. The Court grants this request.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### A. Factual Background

This matter arises from a dispute over the alleged misappropriation of trade secrets related to Plaintiff's business dealings with Tolia and co-Defendant Adam Newman, and with the corporate entities the parties created. (ECF No. 1 §§ I, II.) Though Vorhees filed an Amended Complaint, the differences from the original Complaint extend only to identifications of the parties, to be discussed below. Therefore, the Court refers to and adopts the complete recitation of the facts of this matter contained in this Court's Opinion of October 26, 2018. (ECF No. 54 at 1-5.)

### B. Procedural History

On November 3, 2016, Vorhees filed her Complaint, asserting ten claims: (1) against all Defendants for violations of the New Jersey Trade Secrets Act ("NJTSA"), N.J.S.A. 56:15-1, *et seq.* (Count One); (2) against Tolia and Newman for breach of contract (Count Two); (3) a claim against Tolia and Newman for fraud (Count Three); (4) a claim against all Defendants for breach of confidence (Count Four); (5) a claim against all Defendants for conversion (Count Five); a claim against all Defendants for trespass to chattels (Count Six); (7) against all Defendants for unlawful interference with prospective business advantage (Count Seven); (8) against all Defendants for unfair competition (Count Eight); (9) against all Defendants for breach of the implied covenant of good faith and fair dealing (Count Nine); and (10) against all Defendants for civil conspiracy (Count Ten). (ECF No. 1.) On February 6, 2017, Plaintiff filed a Request for Default against

---

[2] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Newman. (ECF No. 13.) The Clerk entered default as to Newman that same day for failure to plead or otherwise defend. (*See* 2-6-2017 Docket Entry.) On August 4, 2017, Plaintiff filed a Motion for Entry of Default Judgment against Newman. (ECF No. 23.) On February 28, 2017, Tolia and Care moved to dismiss the claims against them, pursuant to Rule 12(b)(6). (ECF No. 14.) On March 2, 2017, Tolia and Care filed an Amended Motion to Dismiss pursuant to Rule 12(b)(6). (ECF No. 17.) This Court granted the Motion to Dismiss with prejudice in January 2018, holding that Vorhees's right to sue was barred by the Stock Surrender Agreement executed by the parties, while an Employment Agreement required Vorhees to arbitrate all her claims. (ECF No. 24.)

Vorhees appealed that decision to the United States Court of Appeals for the Third Circuit in March 2018. (ECF No. 27.) The Third Circuit vacated that judgment, holding that the arbitration agreement in the Stock Surrender Agreement did not waive the parties right to all litigation, only to a jury trial, while the Employment Agreement's arbitration clause was not triggered by claims in the Complaint that were not related to Plaintiff's employment. (ECF No. 32 at 4-5.) The Third Circuit further required this Court to consider on remand the issue of diversity jurisdiction, a claim it held was not sufficiently alleged in the Complaint. (*Id.* at 6.)

This Court reopened the matter on March 14, 2019, and ordered Vorhees to show cause by April 4, 2019 why this Court has subject-matter jurisdiction over the Complaint by filing a proposed Amended Complaint curing the jurisdictional allegations set forth in the Third Circuit's Opinion. (ECF No. 34.) Vorhees filed a Motion for the Recusal of this Court on March 22, 2019, alleging "prior judgments in this matter have been insufficient to allow due process of the law" as "evident by the Judgment of the Court of Appeals." (ECF No. 35.) On April 8, 2019, the Court denied Vorhees's Motion for Recusal, holding that "Generally, beliefs or opinions which merit recusal must involve an extrajudicial factor," *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d

155, 167 (3d Cir. 2004) (quotations omitted), while "judicial rulings alone almost never constitute a valid basis" for recusal, *Liteky v. United States*, 510 U.S. 540, 555 (1994). The Court further held that, because Vorhees had not filed an Amended Complaint remedying the jurisdictional defects identified by the Third Circuit, the matter was dismissed without prejudice. (ECF No. 36.) Vorhees moved to reopen the case on April 26, 2019, a motion this Court granted on May 13, 2019. (ECF Nos. 37, 38.) Vorhees filed an Amended Complaint on May 24, 2019. (ECF No. 39.) Defendants filed this Motion to Dismiss the Amended Complaint on July 22, 2019. (ECF No. 43.) Vorhees filed opposition to the Motion on August 5, 2019, and an Amended Response on August 15, 2019. (ECF No. 44, 45.) Defendants did not file a Reply.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec.*

*Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

## III.  DECISION

As instructed by the Third Circuit, the Court's inquiry for this Motion to Dismiss begins with an inquiry into whether this Court has jurisdiction over the litigation.

In her original Complaint, Vorhees alleged, based on her "being informed and believe[ing]," that she "resides" in Pennsylvania and that Tolia and Newman reside in New Jersey. (Compl. (ECF No. 1) ¶¶ 5, 7-8.) Vorhees also alleged, again based on "being informed and believe[ing]," the entity defendants are organized in and have their principal place of business in New Jersey. (*Id.* ¶ 6.)

The Third Circuit concluded Vorhees's invocation of this Court's diversity jurisdiction was insufficiently pleaded because she alleged only that she and defendants were residents of different states and not citizens of different states as required by § 1332, while she had not made any allegations about the membership or citizenship of the entity defendants. The Third Circuit said *GBForefront, L.P. v. Forefront Management Group, LLC* stood for the proposition that allegations of residence are insufficient to establish an individual's citizenship. *Vorhees v. Tolia*, 761 F. App'x 88, 91 (3d Cir. 2019) (citing *GBForefront*, 888 F.3d 29, 34 (3d. Cir. 2018)); (*see also* ECF No. 32 at 6).

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Company Inc. v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006)). In a case such as this resting

on diversity jurisdiction, the Court must determine for itself whether or not every defendant is completely diverse from the plaintiff. *See Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (quoting *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)).

This Court has jurisdiction over cases between "citizens of different states." *Id.* (quoting § 1332(a)(1). To qualify for so-called diversity jurisdiction, "the parties must be completely diverse, meaning 'no plaintiff can be a citizen of the same state as any of the defendants.'" *Auto-Owners Ins. Co.*, 835 F.3d at 394 (quoting *Grand Union*, 316 F.3d at 410).

Generally, a corporation takes on the citizenship of "both its state of incorporation and the state of its principal place of business." *GBForefront*, 888 F.3d 29, 34 (3d Cir. 2018). "[T]he citizenship of an LLC is determined by the citizenship of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). If the members are themselves limited liability companies (or partnerships, or trusts, or unincorporated associations, etc.), this Court may need to trace the parties' citizenship through multiple layers of entities. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 n. 16 (3d Cir. 2015).

In her Amended Complaint, Vorhees now explicitly alleges she is a citizen of Pennsylvania, and that Tolia and Newman are citizens of New Jersey. (Am. Compl. (ECF No. 39) ¶¶ 5-7.) She provides specific residential addresses for all three individuals. (*Id.*) Gone is the language that these allegations are based on her "being informed and believe[ing]." The Court therefore concludes Vorhees has sufficiently pleaded that all three individuals are citizens of their respective states.

Vorhees now alleges further that Virtuality is a New Jersey limited liability company with a principal place of business in New Jersey and that the only members of the LLC are Tolia and

Newman. Because the Court concluded above that Vorhees had sufficiently pleaded the citizenship of individuals Tolia and Newman—the only members of the LLC—as being in New Jersey, it follows that Vorhees has sufficiently pleaded the New Jersey citizenship of Virtuality.

Similarly, Vorhees alleges Care LLC is a New Jersey limited liability company with a principal place of business in North Brunswick, New Jersey, and that Tolia, a New Jersey citizen, is the sole member of Care. Accordingly, Vorhees has sufficiently pleaded the New Jersey citizenship of Care. Vorhees also alleges Augthat LLC is a New Jersey limited liability company with a principal place of business in Marlboro, New Jersey, and that Newman, a New Jersey citizen, is the sole member of Augthat. Vorhees has thus sufficiently pleaded the New Jersey citizenship of Augthat. As Vorhees is alleged to be a citizen of Pennsylvania and all Defendants are alleged to be citizens of New Jersey, the Court concludes Vorhees has established this litigation is between citizens of different states as contemplated by § 1332 and that the Court thus has subject-matter jurisdiction.

Having determined the threshold concern identified by the Third Circuit, the Court now turns to Defendants' arguments for dismissing the Amended Complaint.

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

Tolia and Care seek dismissal of the Amended Complaint because, while Vorhees alleges the five defendants breached a contract, committed fraud, and misappropriated $3 million of plaintiff's trade secrets and intellectual property, the Amended Complaint "fails to include any specific details of alleged fraud, and fails to identify: (a) the contract that was allegedly breached, (b) any alleged trade secrets, and (c) any intellectual property belonging to the plaintiff."[3] (Defs.'

---

[3] Defendants also attack the Amended Complaint by contrasting what they conclude is Vorhees's "styl[ing] herself as 'a developer and distributor/supplier for Augmented Reality for Education (AR4ED) software services,'" and possessing only a high school education, with Tolia, who "has

Br. in Supp. of Mot. to Dismiss (ECF No. 43-1) at 18.) Furthermore, Defendants argue, to the extent any intellectual property Vorhees shared with Defendants had value, Vorhees "admitted" such property was worthless by her execution of the Stock Surrender Agreement.[4] (*Id.*) The result of that admission, Defendants contends, should be the dismissal of "counts one (trade secrets misappropriation), five (conversion), six (trespass to chattels), seven (tortious interference), eight (unfair competition), and ten (civil conspiracy) for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." (*Id.* at 2.) Defendants further contend the Amended Complaint should be dismissed because none of the counts meets the plausibility standard required by *Iqbal* and *Twombly*. Finally, Defendants argue Count 3 in particular should be dismissed because allegations resting on Vorhees's "information and belief" cannot meet the heightened pleading standard required for claims of fraud.

Vorhees counters that Tolia "signed a Non Discloser [sic] Agreement and was acting Vice President of the Plaintiff's Company Pear Enterprises Inc. during and after forming a cloned Augmented Reality company Care LLC," and so had "a direct access and relationship to the Plaintiff's business dealings, trade secrets, intellectual property, known how, and anything else deemed proprietary and secret to the Plaintiff." (Pl.'s Amended Br. in Opp. to Mot. (ECF No. 45)

---

a bachelor's degree in computer sciences, and over 20 years in the computer technology industry." ECF No. 43-1 at 4.) The Court, however, is guided by the standards governing a Motion to Dismiss, in which the Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. Therefore, the Court declines to consider Defendants' attempt to contrast the intellectual pedigrees of Vorhees and Tolia.

[4] Plaintiff did not include the Stock Surrender Agreement with either the Complaint or the Amended Complaint; Moving Defendants filed a copy with the Motion to Dismiss the original Complaint. (ECF No. 17-2.) The Court considers this Agreement as it is "integral to or explicitly relied upon" both in the Complaint and the Amended Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

at 6.) In other words, Vorhees identifies the Non Disclosure Agreement[5] as the source of her claims, not the Stock Surrender Agreement or the Employment Agreement that Defendants see as the genesis of her claims.

Vorhees likens the allegations of the Amended Complaint to a 2011 case, *TechForward Inc. v. Best Buy Co. Inc.*, where a California jury awarded the plaintiff $22 million in damages for defendant's use of the plaintiff's Guaranteed Buyback Program trade secrets. (*Id.* at 7 (citing *TechForward,* No. CV 11-01313-ODW (JEMx) (C.D. Cal. Nov. 16, 2012).)[6]

Vorhees further argues the Amended Complaint "clearly identified her Augmented Reality for Education (AR4ED) inventions and created content that was cloned and stolen by the Defendants and used to start competing companies." (ECF No. 45 at 10) Vorhees then lists the following as either inventions or created content:

> AR4ED Worksheets with curriculum, AR4ED Posters, AR4Reality(Real Estate ads), AR Yearbook, ART-Shirts, ARCARDS,(Greeting Cards, Flash Cards, that come to life) AR for Marketing, AR for Enterprise and Training (Pharmaceutical), AR for Wearable displays to help those with vision issues (SightAR), AR4ET (Exposure Therapy) AR4ART (FiFi Face Painting App.)

---

[5] The Non Disclosure Agreement was not attached to either the Complaint or the Amended Complaint. Vorhees filed a copy of the Non Disclosure Agreement between Plaintiff, Pear and Tolia with her Opposition to Tolia's Motion to Dismiss the original Complaint. (ECF No. 18-3.) The Court considers this agreement as it is "integral to or explicitly relied upon" both in the Complaint and the Amended Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

[6] Plaintiff cites the website http://tsi.brooklaw.edu/cases/techforward-inc-v-best-buy-co-inc; *see also* Trade Secrets News: Court Awards $5 Million in Exemplary Damages in Trade Secrets Case Against Best Buy, After Jury Awarded $22 Million for Unjust Enrichment, 2012 WL 9498125.

> Tiger Face App, AR Puzzle, ARBooks, and the Pear Imaginality
> Play and Create Software (Partner Mindspace Solutions)

(*Id.* at 10.)

As to Defendants' argument this intellectual property is worthless, Vorhees in her brief alleges Tolia on April 24, 2014 "filed the paperwork for a patent application (#61/984,498) claiming her as sole inventor of "Augmented Reality Assisted Education Content Management System" that includes clones of Vorhees's "AR4ED Worksheet and processes" as well as material "created using Pear Imaginality and Create software (with Teacher curriculum guides) and its 3D object software interactions and delivery system to the end user." (*Id.* at 10-11; *see also* ECF No. 44-1 at 13-34.) Though April 2014 was a period in which Tolia was working for Vorhees's Pear, Vorhees alleges she did not know then about the patent filing. But, she argues, Tolia's filing for a patent on an Augmented Reality system that includes Vorhees's content belies Defendants' contention that Vorhees's intellectual property was worthless.

To begin, the Court must determine whether Vorhees has put forth sufficient allegations to allow the Court to identify the contract allegedly breached. From a review of the Amended Complaint, it is clear Vorhees sees the Non Disclosure Agreement as the source of the rights she seeks to enforce through this litigation.

This contract provides that Tolia "shall not otherwise use [Pear's and Vorhees's] Confidential Information except as specifically agreed/approved by PEAR [sic] in writing and only where any and all proposed recipients of Confidential Information shall have first executed a confidentiality agreement substantially in the form of this Agreement." (ECF No. 18-3 at 20.) Count One's misappropriation of trade secrets claim rests on the allegation Tolia "was provided access to such trade secrets in her position" as vice president of Pear. (ECF No. 39 ¶ 67.) Count Two's breach of contract claim expressly alleges Defendants "[b]reach[ed] their obligations of the

NDA confidentiality and trade secret agreement." (*Id.* ¶ 79(a).) Count Seven's unlawful interference with prospective business advantage claim relates to Defendants' use of Vorhees's and Pear's "contacts, industry networks, and projected customer demographics," information this Court reads as constituting Pear's confidential information. (*Id.* ¶ 109.) Count Nine's breach of implied covenant of good faith and fair dealings rests upon allegations of Defendants' "theft of processes, know how, wrongful retention of trade secrets and product concepts." (*Id.* ¶ 123.) Count Ten's civil conspiracy claim centers on the allegation that Defendants had a "secret plan to commit fraud and steal data, information, selectively solicit key employees and associates, and provide confidential information to a competing business." (*Id.* ¶ 127.)

Four remaining counts reference allegations pertaining to so-called non-trade secrets. (*See* Count Four breach of confidence, *id.* ¶ 91; Count Five, conversion, *id.* ¶ 97; Count Six, trespass to chattels, *id.* ¶ 102; Count Eight, unfair competition, *id.* ¶ 119.) Vorhees does not define the term "non-trade secrets." However, at least one reference in the Amended Complaint to non-trade secret information describes it as proprietary information in the Amended Complaint. (*See, e.g, id.* ¶ 91.) For its part, the Non Disclosure Agreement covers, among other categories of information: "Any other documents, information or things that have value to Pear and it is [sic] business or which might reasonably be characterized as confidential or proprietary." (ECF No. 18-3 at 20.)

More directly, the Amended Complaint begins with the allegation: "This action arises out of Defendants Tolia and Newman's collusion and use of misappropriated proprietary, confidential and trade secret information in connection with the Defendants' intent to make use of the misappropriated trade secrets to form Virtuality, Care, and Augthat, unbeknownst to Plaintiff Voorhees." In other words, the entire action arises from or relates to the Non Disclosure

Agreement.[7] Having determined Vorhees has adequately alleged facts for the Court to conclude the Non Disclosure Agreement is the contract Vorhees alleges was breached by Defendants, the Court will address each Count of the Amended Complaint in turn.

### 1. Count One: Misappropriate of Trade Secrets

To begin, Vorhees alleges misappropriation of trade secrets pursuant to N.J. Stat. Ann. § 56:15-1. *et seq.* Specifically, Vorhees alleges Tolia was provided access to Vorhees's trade

---

[7] The Non Disclosure Agreement contains forum-selection and choice-of-law clauses. Though the parties are silent about the potential implications of these clauses, the Court *sua sponte* reviews those clauses to determine whether this NDA itself deprives this Court of jurisdiction. *See M/S Bremen v. Zapata Off-Shore Co.*, 92 S. Ct. 1907, 1916, 407 U.S. 1, 15 (1972) (The "forum clause should control absent a strong showing that it should be set aside."). The NDA provides that it "is governed by and shall be construed" in accordance with Pennsylvania law and that "any action arising out of or pertaining to this Agreement shall be initiated and maintained in LACKAWANNA COUNTY." (*Id.* at 21.) A forum selection clause generally "is treated as a manifestation of the parties' preferences as to a convenient forum" and is "entitled to substantial consideration." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). Vorhees does not explain in the Amended Complaint nor in her opposition to this Motion why she invokes the authority of this Court to enforce an agreement that clearly limits forum choice to courts in Pennsylvania. Defendants also are silent about the implications of this forum selection clause.

Pursuant to the doctrine of *forum non conveniens*, this Court may dismiss a case if "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). "The Third Circuit applies a three-part analysis in determining if dismissal based on [] *forum non conveniens* is appropriate." *Warner Tech. & Inv. Corp. v. Hou*, No. 13-7415, 2014 WL 7409978, at *3 (D.N.J. Dec. 31, 2014). First, the Court must "determine whether an adequate alternative forum can entertain the case." *Id.* (quoting *Windt v. Qwest Commc'ns Int'l, Inc.,* 529 F.3d 183, 188–89 (3d Cir. 2008)). Second, "the district court must then determine the appropriate amount of deference to be given the plaintiff's choice of forum." *Id.* (quoting *Windt*, 529 F.3d at 190). Third, "the district court must balance the relevant public and private interest factors." *Id.* (quoting *Windt*, 529 F.3d at 190). "If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on *forum non conveniens* grounds." *Id.* (quoting *Windt*, 529 F.3d at 190).

It is clear another, adequate forum exists for this action, as the Non Disclosure Agreement expressly provides for Lackawanna County courts. On the second *Windt* factor, Vorhees asked Tolia to sign a Non Disclosure Agreement expressly providing for a Pennsylvania forum for any action arising from that agreement, but she filed this action in the U.S. District Court for the District of New Jersey and explicitly stated as the basis for the litigation the common law and statutes of New Jersey. When considering the balance of the public and private interests, the public interest

secrets while at Pear and then at Virtuality, which Tolia took with her to Care,[8] and were the subject of the Non Disclosure Agreement. (ECF No. 39 ¶¶ 67-68.) Vorhees further alleges Tolia and Care "continue[] to possess and make use of [Vorhees's] trade secrets held in their memory,

---

factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty. *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. 10-1681, 2013 WL 5913675, at *7 (D.N.J. Oct. 31, 2013). The first factor is neutral, as this litigation has been on the Court's docket since the Complaint was filed in April 2016. The second factor weighs in favor of retaining jurisdiction because, while Plaintiff is a citizen of Pennsylvania, the remaining parties all are citizens of New Jersey and many of the acts alleged in the Amended Complaint occurred in New Jersey. The third factor weighs in favor of retaining jurisdiction, as Vorhees's Amended Complaint references New Jersey's trade secrets statutory regime and New Jersey's common law. Finally, the fourth factor also weighs in favor of retaining jurisdiction because, as the decision of the Third Circuit makes clear, via the Stock Surrender Agreement the parties waived their right to a jury trial for any dispute related to that agreement. Accordingly, the Court concludes the relevant factors weigh against dismissal on the basis of *forum non conveniens.*

The Court also must consider the NDA's choice-of-law clause. In considering choice-of-law issues, New Jersey follows the "most significant relationship" test. *Maniscalo v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459-60 (2008)). Here, the misappropriation and intentional torts all are alleged to have been conducted by New Jersey entities or citizens, and most are alleged to have been conducted in New Jersey. Thus, the Court concludes New Jersey law governs claims related to trade secrets and intentional torts, including Counts One, Three, Four, Five, Six, Seven, Eight, and Ten.

For the fraud claim, there is a conflict of laws, as under Pennsylvania law the statute of limitations is two years from the date of injury, 42 Pa. Con. Stat. § 5524, while the statute of limitations is six years in New Jersey. N.J. Stat. Ann. § 2A:14–1. Where a conflict exists, the Court "must determine which jurisdiction has the 'most significant relationship' to the claim." *Mansicalo*, 709 F.3d at 207 (quoting *Camp Jaycee*, 962 A.2d at 461). For breach-of-contract claims, the general rule is that the law of the state with the most significant relationship to the parties and the transaction under the principles stated in *Restatement* section 6 governs. *Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 629 A.2d 885, 888, 134 N.J. 96, 102 (1993). Because the fraud and breach-of-contract actions are alleged to have been conducted by New Jersey entities or citizens, and most are alleged to have been conducted in New Jersey, the Court concludes New Jersey law governs claims related to fraud and breach of contract.

---

[8] Vorhees similarly alleges Newman was exposed to her trade secrets while at Virtuality and that he took with him to Augthat. (ECF No. 39 at ¶¶ 66-75.) Since Newman has not moved for dismissal, this Opinion focuses only on counts and allegations in the Amended Complaint as they relate to Tolia and/or Care.

samples, and by way of an electronic format of downloaded files, emails and work product created by" Vorhees. (*Id.* ¶¶ 69-70.)

The NJTSA, N.J. Stat. Ann. § 56:15-1, *et seq.*, prohibits the actual or threatened misappropriation of a "trade secret." N.J. Stat Ann. § 56:15-3. The NJTSA defines "trade secret" as "information" that (1) "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and (2) that the holder reasonably endeavors to maintain as confidential. N.J. Stat. Ann. § 56:15-2. Misappropriation of a qualifying trade secret is defined as:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that a person acquired the trade secret by improper means; or
> (2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:
> > (a) Used improper means to acquire knowledge of the trade secret;
> > (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or
> > (c) Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

N.J. Stat. Ann. § 56:15-2.

To determine whether confidential business information is recognized as a trade secret, a court must consider the following factors:

> (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Communications Workers of America v. McCormac*, 9 A.3d 1106, 1123 (N.J. Super. 2008) (quoting *Hammock v. Hoffman–LaRoche, Inc.,* 662 A.2d 546, 560 (N.J. 1995) (citing *Restatement of Torts* § 757 comment b (1971)). The Court is not persuaded Vorhees has sufficiently pleaded facts to meet the six-part *Hammock* test. For instance, factors one through three require an inquiry into the extent Vorhees's information was known outside of her business, the extent to which it is known by employees and others involved in that business, and the extent of measures taken by her to guard the secrecy of this information. However, her measures taken to guard the secrecy of her information were inconsistent, as seen in the fact that while Vorhees had Tolia sign a Non Disclosure Agreement, Newman did not. (ECF No. 39 ¶¶ 19, 31.) The information was known outside her business because Tolia, a Pear executive, revealed this information to Newman at a time when he was not an employee of that entity. (*Id.* ¶ 24) Similarly, in the Amended Complaint, Vorhees is silent about the fifth factor—the extent of any expenditures she made to develop her alleged trade secrets.

As to the fourth factor, the value of the confidential information to Vorhees, Defendants invoke a separate agreement among the parties, the Stock Surrender Agreement. Tolia argues that contract "proves that any intellectual property contributions by plaintiff were worthless." Specifically, the agreement provides, in relevant part: "WHEREAS, [Plaintiff] acknowledges that [the] market value of shares of [Virtuality] is zero dollars due to absence of any[] revenues, business or any Intellectual Property Rights, whatsoever . . . ." (ECF No. 17-2 at 2.) Plaintiff alleges she signed the Stock Surrender Agreement on February 1, 2014, because she "was informed by [Tolia and Newman] that shares in [Virtuality] had no value." (ECF No. 39 ¶ 40.) Plaintiff alleges she "felt coerced into selling her stock on the basis that if she did not do so, the investor would pull out." (*Id.*)

The Third Circuit has held a claim of coercion "is a challenge to the validity (rather than the formation) of [a contract]." *See SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 274 (3d Cir. 2013). Vorhees does not allege, in the words of *SBRMCOA*, that her "capacity to consent was so diminished that no contract was ever formed or that [she] was necessarily unable to consent" to the contract. *Id.* Instead, Vorhees appears to claim to have felt coerced only by the prospect of a bad outcome: losing an investor. Vorhees does not dispute the authenticity of the Stock Surrender Agreement. (*See* ECF No. 18.) Therefore, because Vorhees has not alleged that her capacity to consent to the Agreement was so diminished that no contract was ever formed and because Vorhees has not adequately challenged the validity of the Stock Surrender Agreement the Court concludes for the purposes of this Motion the Stock Surrender Agreement was a valid contract. It follows, then, that Vorhees is bound by the clause of that agreement in which she "acknowledges that [the] market value of shares of [Virtuality] is zero dollars due to absence of any[] revenues, business or any Intellectual Property Rights, whatsoever."

In the Amended Complaint, however, Vorhees asserts a value of the Augmented Reality trade secrets at roughly $2.9 million. Even utilizing the standards for a Motion to Dismiss, the Court cannot reconcile conflicting statements from the Amended Complaint based on the factual allegations presented therein, that Vorhees would sign a Stock Surrender Agreement for which a predicate act was her acknowledgment Virtuality had no value and that the "trade secrets" she alleges were misappropriated by Tolia,[9] Newman, Care and Augthat are valued at $2.9 million. Furthermore, in the Non Disclosure Agreement Tolia acknowledged that Pear's "Confidential

---

[9] Separately, in signing the Non Disclosure Agreement Tolia acknowledged "the Confidential Information [of Pear] is of significant value and is the result of material investment by Pear." (ECF No. 18-3 at 20.) Here again, however, no value of the confidential information is provided.

Information is of significant value and is the result of material investment by Pear." (ECF No. 18-3 at 20.) Of course, even if the confidential information at present indeed had no economic value, one need look no further than, say, a Honus Wagner baseball card for an example of a product once considered of little value that acquired tremendous value later.[10] However, Plaintiff has provided no cognizable facts from which this Court could conclude or imply the alleged trade secrets had actual or potential economic value as contemplated by the NJTSA. While she claims Defendants are using her secrets, there are no facts that would enable the Court to establish an economic value to her secrets. Accordingly, Defendants' Motion to Dismiss Count One's Trade Secret Acts claim is **GRANTED**.

Defendants contend Vorhees's inability to sufficiently plead any basis for attributing economic value to any trade secrets or intellectual property she alleges should lead this Court to dismiss "counts one (trade secrets misappropriation), five (conversion), six (trespass to chattels), seven (tortious interference), eight (unfair competition), and ten (civil conspiracy) for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and Twombly." (ECF No. 43-1 at 2.) The Court is not persuaded Plaintiff's failure on this point sweeps five other claims out the courthouse doors along with the misappropriation claim. The Court must then examine each claim separately.

### 2. Count Two: Breach of Contract

In New Jersey, a "party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citations omitted). The Amended Complaint alleges

---

[10] *See, e.g, Montanile v. Botticelli*, No. 1:08cv716, 2009 WL 2378684, at *7 (E.D.Va. July 28, 2009) (describing the Honus Wagner T206 American Tobacco Company likeness to be the most sought after baseball card of all time).

Tolia signed the Non Disclosure Agreement and is in breach of that agreement because she is using Pear's confidential information to further the business of Care, and that this has resulted in damages in the form of Vorhees's inability to get Pear started. Vorhees therefore has pleaded factual allegations touching each of these four factors. Accordingly, Defendants' Motion to Dismiss Count Two is **DENIED**.

### 3. Count Three: Fraud

The Supreme Court of New Jersey has stated the elements of common-law fraud as: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Allstate New Jersey Ins. Co. v. Lajara*, 117 A.3d 1221, 1231 (2015) (quoting *Banco Popular N. Am. v. Gandi,* 876 A.2d 253, 260 (N.J. 2005) (internal quotation marks omitted)).

Vorhees's fraud claim hinges on the misrepresentations about Virtuality investors discussed above. Had she known there were no investors, Vorhees alleges, she never would have signed the Stock Surrender Agreement through which she signed away her ownership interest in Virtuality, nor would she have contributed funds to that entity. (ECF No. 39 ¶¶ 82-88.)

Defendants argue the fraud claim "doesn't even come close to satisfying even the *Twombly* pleading standard, let alone the heightened pleading standard required under Fed. R. Civ. P. 9(b)." (ECF No. 43-1 at 2.) Defendants base this argument in part on Vorhees's use of language that here allegations are based on her being "also informed and believes, and based upon such information and belief alleges."

Defendants contend that "pursuant to Fed. R. Civ. P. 9(b), when alleging a claim for fraud, a plaintiff must include in its pleading, the date, time, and place of the alleged fraud, or else

otherwise inject some degree of precision or other measure of substantiating a fraud allegation." (*Id.* at 18-19 (citing *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp.3d 492, 503–04 (D.N.J. 2014) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007))).) Defendants contend such information is missing from the Amended Complaint. The Court disagrees.

First, the window in which these events occurred is fairly tight: Vorhees alleges Virtuality was formed on December 29, 2013, while the Stock Surrender Agreement was executed on February 1, 2014. (ECF No. 39 ¶¶ 36, 45; *see also* Stock Surrender Agreement at ECF No. 17-2 at 2). The Court is satisfied that the Amended Complaint contains "some degree of precision" in establishing the time element required by Rule 9(b) and *Rapid Models*.

However, the Court is not persuaded that Vorhees has adequately pleaded facts pointing to Tolia as a perpetrator of the alleged fraud. That is because Vorhees alleges she learned of the fabricated investors in a November 2014 phone call with Newman. On that call, Vorhees learned "that 'investors' never existed" and that the "investors" were "fabricated as a means to force Plaintiff Voorhees out." The Amended Complaint does not allege Tolia fabricated the investors. Indeed, the Amended Complaint states that Newman responded to Vorhees's inquiries by saying "he would be handling all communications with the alleged investor." (ECF No. 39 ¶ 43.) While Vorhees makes clear Newman told her Tolia always wanted Vorhees removed from Virtuality, Vorhees has not made any allegations explicitly stating that Tolia and Newman acted in concert. Tolia, after all, was the one who told Vorhees on February 20, 2014 that Newman had raided Virulity funds to purchase a vehicle for himself. Because the Amended Complaint does not

implicate Tolia in the alleged fraud, Defendants' Motion to Dismiss Count Three as to Tolia and Care is **GRANTED**.[11]

### 4. Count Four: Breach of Confidence

Defendants argue Count Four should be dismissed because breach of confidence "isn't even recognized as a cause of action under New Jersey law." (ECF No. 43-1 at 2.) Vorhees does not dispute this contention.

The Third Circuit, however, has recognized that the tort of "a breach of confidence involves 'the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship.'" *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (citing Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426, 1455 (1982)); *see also McGuire v. Shubert*, 722 A.2d 1087, 1091 (Pa. Super. Ct. 1998) (breach of confidence requires "banker [to] divulge to third persons, without the consent of the customer . . . any information relating to the customer acquired through the keeping of his account" (quoting *Peterson v. Idaho First Nat. Bank*, 83 Idaho 578, 367 P.2d 284, 290 (Idaho 1961))).

*Kamal* involved alleged violations of the Fair and Accurate Credit Transactions Act by a retailer whose receipts includes various digits from a customer's credit-card number. 918 F.3d at 106. The plaintiff contended the injury of having his credit-card identifiers publicized on the retailer defendant's receipts was "analogous to common law privacy torts and an action for breach of confidence." *Id.* at 114. The Third Circuit, however, held that central to a breach-of-confidence claim is that a "third party gain[ed] unauthorized access to a plaintiff's personal

---

[11] Because Newman did not move to dismiss, the Court takes no position on the sufficiency of the fraud pleading as to Newman.

information," something absent from the facts alleged by the plaintiffs. *Id.* This element also is missing from Vorhees's Amended Complaint. That is because Tolia and Newman learned of the information Vorhees claims is confidential from Vorhees herself. Because Vorhees has not alleged that a third party gained unauthorized access to her personal information, Vorhees has not stated a claim for breach of confidence.[12] Accordingly, Defendants' Motion to Dismiss Count Four is **GRANTED**.

### 5. Count Five: Conversion

Under New Jersey law, "conversion is 'the exercise of any act of dominion in denial of another's title to the chattels or inconsistent with such title.'" *Latef v. Cicenia*, A-5747-13T2, 2015 WL 10458543, at *5 (N.J. Super. App. Div. March 14, 2016) (citing *Lembaga Enters., Inc. v. Cace Trucking & Warehouse, Inc.,* 727 A.2d 1026, 1029 (N.J. Super. Ct. App. Div. 1999) (quoting *Mueller v. Tech. Devices Corp.,* 84 A.2d 620, 623 (1951)). To state a conversion claim, Plaintiff must establish (1) "the property and right to immediate possession thereof belong to the plaintiff" and (2) "the wrongful act of interference with that right by the defendant." *Latef*, A-5747-13T2, 2015 WL 10458543, at *5 (citing *First Nat'l Bank v. N. Jersey Trust Co.,* 14 A.2d 765, 768 (N.J. Super. Ct. 1940)). In other words, Vorhees must only allege she has a property right, here the confidential information of she and Pear, and that Defendants interfered with that right. Whether that economic or property right has value or not is an issue not implicated in this inquiry. Vorhees does allege a property right in trade secrets, and she alleges Defendants have interfered with that property right by "depriv[ing] Vorhees of [her] ability to exclusively use and possess [this] property." (ECF No. 39 ¶ 98.) More specifically, Vorhees alleges Defendants continue to

---

[12] Because Newman did not move to dismiss, the Court takes no position on the sufficiency of the breach-of-confidence pleading as to Newman.

"make use of" her property in their businesses. (*Id.* ¶ 71.) Accordingly, the Court is persuaded Vorhees has sufficiently alleged facts to meet the *Latef* factors, and the Motion to Dismiss Count Five for Conversion is **DENIED**.

### 6. Count Six: Trespass to Chattels

As this Court has recognized, "[s]ome previous decisions of New Jersey Supreme Court have intimated the tort of trespass to chattels is recognized under New Jersey state law." *Knox v. Samsung Electronics America, Inc.*, No. 08–4308, 2009 WL 1810728, at *8 (D.N.J. 2009) (citing *Mueller v. Technical Devices Corp.,* 84 A.2d 620, 623 (1952) (quoting *Frome v. Dennis,* 45 N.J.L. 515 (N.J. 1883), for the proposition that a lesser interference than a conversion would constitute a trespass to chattels)). Though the *Knox* court could *not* identify any New Jersey decision formally adopting the approach of the Restatement (Second) of Torts, *Knox*, No. 08–4308, 2009 WL 1810728, at *8, the Court is at least persuaded by the Restatement's recognition that trespass to a chattel is not confined only to damage to the chattel, but also "may be committed by intentionally . . . intermeddling with a chattel in the possession of another." Restatement (Second) of Torts § 217 (1965). As trespass to chattels connotes a lesser interference than conversion does and the Court already has denied the Motion to Dismiss the conversion count, it follows then that the Motion to Dismiss the trespass-to-chattels count also is **DENIED**.

### 7. Count Seven: Unlawful Interference With Prospective Business Advantage

Vorhees titles Count Seven Unlawful Interference with Prospective Business Advantage. As there is no statute or case in New Jersey recognizing such a claim, the Court construes Count Seven as alleging tortious interference with a prospective business relation. In New Jersey, an "action for tortious interference with a prospective business relation protects the right 'to pursue one's business, calling or occupation free from undue influence or molestation.'" *Printing Mart-*

*Morristown v. Sharp Electronics Corp.*, 563 A.2d 31, 36 (N.J. 1989) (quoting *Louis Kamm, Inc. v. Flink,* 113 N.J.L. 582, 586, 175 A. 62 (E.&A. 1934)). The actionable conduct of a tortious interference claim is "[t]he luring away, by devious, improper and unrighteous means, of the customer of another." *Printing Mart-Morristown*, 563 A.2d at 36 (quoting *Louis Kamm,* 113 N.J.L. at 586). As the *Printing Mart-Morristown* Court stated, to prevail on a tortious interference claim a plaintiff must allege facts that show some protectable right—a prospective economic or contractual relationship; that the interference was done intentionally and with "malice"; that the interference caused the loss of the prospective gain; and that the injury caused damage. 563 A.2d at 37, 116 N.J. at 751–52. (internal citations omitted).

In the Amended Complaint, Vorhees appears to allege Defendants interfered with a protectable right held by herself and Pear, the right being Pear's "contacts, industry networks, and projected customer demographics, future economic relationships, and with which is expected contracts in the future." (ECF No. 39 ¶ 109.) However, Vorhees identifies Pear as a dormant business, so the Court cannot conclude on the basis of the facts alleged here that there has been a "luring away" by any means of a Pear customer. *Printing Mart-Morristown*, 563 A.2d at 36 (*see also* ECF No. 39 ¶ 14.) While Vorhees further alleges the actions of Tolia and Care have frustrated the start-up efforts of Vorhees and Pear, she provides no facts to support this conclusory statement.[13] Accordingly, Defendants' Motion to Dismiss Count Seven is **GRANTED**.

### 8. Count Eight: Unfair Competition

New Jersey has an unfair competition statutory regime. *See* N.J. Stan. Ann. §§ 54:4-1 to 2. In the introduction of the Amended Complaint, Vorhees states it is an action for, *inter alia*,

---

[13] Because Newman did not move to dismiss, the Court takes no position on the sufficiency of the tortious-interference pleading as to Newman.

"common law and statutory unfair competition (N.J.S.A. 56:4 - 1 to 2)." (ECF No. 39 § 1.) However, Count Eight invokes only the common-law tort. (*Id.* ¶¶ 116-21). The common-law tort of unfair competition is "an 'amorphous' area of law and is generally defined as the 'misappropriation of one's property by another . . . which has some sort of commercial or pecuniary value.'" *ADP, LLC v. Kusins*, 215 A.3d 924, 951 (N.J. Super. App. Div. 2019) (citing *Duffy v. Charles Schwab & Co.*, 97 F. Supp. 2d 592, 600 (D.N.J. 2000) (quoting *N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*, 365 A.2d 956, 965 (Ch. Div. 1976)). "A prima facie case of unfair competition . . . requires evidence of bad faith or malicious conduct." *Samsung America Inc. v. Park*, 2006 WL 3627072, at *17 (N.J. Super. App. Div. 2006) (citing *National Football League Properties Inc., v. New Jersey Giants, Inc.,* 637 F. Supp. 507, 518 (D.N.J 1986).) Vorhees alleges Defendants committed acts constituting unfair competition by "stealing non-trade secret proprietary information, using for Defendants' own purposes, and adversely to the interests of [Vorhees] and Pear . . . and interfering with her ability to establish her start up business." (ECF No. 39 ¶119.) More specifically, Plaintiff alleges Tolia severed her working relationship with Vorhees but continued to use Pear's lmaginality platform through December 2014. (*Id.* ¶¶ 57-60.)

Generally the common law tort of unfair competition "espouse[s] more scrupulous standards of business fairness and commercial morality in trade." *Columbia Broadcasting System, Inc. v Melody Recordings, Inc.*, 341 A.2d 348, 352 (N.J. Super. App. Div. 1975) (citing *Q-Tips v. Johnson & Johnson*, 206 F. 2d 144, 145 (3d Cir. 1953), *cert. den'd* 346 U.S. 867, 74 S. Ct. 106, 98 L.Ed. 377 (1953).) As the *CBS* Court noted, "Reflecting this bent, it has been observed that the essence of unfair competition is fair play." *CBS*, 341 A.2d at 376 (citing *American Shops, Inc. v. American Fashion, etc., Inc.*, 80 A.2d 575, 577 (N.J. Super. App. Div. 1951). Vorhees alleges Tolia and Care misappropriated Pear's business information. (ECF No. 39 ¶¶ 57-60.) Among other

conduct, Vorhees alleges that, in the wake of discovering Newman's misuse of Virtuality funds, Tolia established Care using the business information of Pear and Virtuality, all without the knowledge of Vorhees. The Court concludes from this that Vorhees has sufficiently pleaded a claim for common law unfair competition. Accordingly, Defendants' Motion to Dismiss Count Eight is **DENIED**.

### 9. Count Nine: Breach of Implied Covenant of Good Faith and Fair Dealing

As the Supreme Court of New Jersey has stated, it is well established that "every contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (1997) (citing *Pickett v. Lloyd's,* 621 A.2d 445, 450 (1993); *Onderdonk v. Presbyterian Homes,* 425 A.2d 1057, 1062 (1981); *Bak–A–Lum Corp. v. Alcoa Bldg. Prods., Inc.,* 351 A.2d 349, 352 (1976); *Association Group Life, Inc. v. Catholic War Veterans,* 293 A.2d 382 (1972); *Palisades Properties, Inc. v. Brunetti,* 207 A.2d 522, 531 (1965).) "In every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing.'" *Sons of Thunder*, 690 A.2d at 587 (citing *Palisades Properties,* 207 A.2d at 531 (citing 5 *Williston on Contracts* § 670, at 159–60 (3d ed. 1961)).) "A breach of the implied covenant of good faith and fair dealing differs from a 'literal violation of a contract[.]'" *Wade v. Kessler Institute*, 798 A.2d 1251, 1259–60 (2002) (quoting *Bak–A–Lum,* 351 A.2d at 352; *see also* Richard A. Lord, *Williston on Contracts* § 38:12 at 423–24 (4th ed. 2000) (outlining distinction between implied and express contractual conditions).

In the Non Disclosure Agreement agreed to by Pear, Vorhees (both as President of Pear and individually), and Tolia, Tolia agreed "all Confidential Information is and shall remain the

exclusive property of Pear." (ECF No. 18-3 at 20.) The Amended Complaint is silent on whether Pear's "confidential information" traveled with Vorhees to Virtuality. The Amended Complaint does claim Tolia and Care "continue[] to possess and make use of [Vorhees's] trade secrets held in their memory, samples, and by way of an electronic format of downloaded files, emails and work product created by" Vorhees. (*Id.* ¶¶ 69-70.) In viewing the Amended Complaint in the light most favorable to Vorhees as the nonmoving party, the Court concludes Vorhees has sufficiently pleaded a breach of implied covenant of good faith and fair dealing. Therefore, Defendants' Motion to Dismiss Count Nine is **DENIED**.

### 10. Count Ten: Civil Conspiracy

In New Jersey, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflect a wrong against or injury upon another and an overt act that results in damage." *Banco Popular North America v. Gandi*, 876 A.2d 253, 263 (2005) (citing *Morgan v. Union County Bd. of Chosen Freeholders,* 633 A.2d 985, 998 (App. Div. 1993), *cert. den'd,* 640 A.2d 850 (1994) (quoting *Rotermund v. U.S. Steel Corp.,* 474 F.2d 1139, 1145 (8th Cir. 1973) (internal quotations omitted)).

Vorhees alleges Tolia and Newman had a "secret plan to commit fraud and steal data, information, selectively solicit key employees and associates, and provide confidential information to a competing business" while still affiliated with Vorhees and that they did so "with full knowledge of each other's actions." (ECF No. 39 ¶ 127.) The source for this allegation of what Vorhees calls a secret plan appears to be a conversation Vorhees had with Newman in November 2014, from which Vorhees learned Tolia wanted to force Plaintiff out of Pear/Virtuality from the beginning of their relationship. (*Id.* ¶ 62.) Newman also told Vorhees there were never any actual

investors, who were fabricated as a means to drive Vorhees from Virtuality. (*Id.*) Yet, as alleged in the Amended Complaint, there is little evidence of an agreement between Tolia and Newman "to inflect a wrong against or injury upon another and an overt act that results in damage." *Banco Popular*, 876 A.2d at 263. For instance, the Amended Complaint alleges Newman stated that the investors were fabricated. It does not allege whether this fabrication was the product of an agreement between Tolia and Newman, or even that Tolia knew about this fabrication. Indeed, Vorhees alleges she was told by Newman that he would handle all contacts with these investors. A review of the Amended Complaint reveals that all other actions attributed to Tolia and Newman aided their separate companies, Tolia with Care and Newman with Augthat. Because the Amended Complaint does not sufficiently allege an agreement between Tolia and Newman to inflict a wrong against Vorhees or Pear, Defendants' Motion to Dismiss Count Ten's Civil Conspiracy claim is **GRANTED**.[14]

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** as to Counts One (Breach of Contract), Three (Fraud), Four (Breach of Confidence), Seven (Tortious Interference with Prospective Business Relations) and Ten (Civil Conspiracy), and only as to Tolia and Care, and **DENIED** as to Counts Two (Breach of Contract), Five (Conversion), Six (Trespass to Chattels), Eight (Unfair Competition) and Nine (Breach of Implied Covenant of Good Faith and Fair Dealing). An appropriate Order will follow.


**Date: March 17, 2020**                    */s/ Brian R. Martinotti*
                                            **HON. BRIAN R. MARTINOTTI**
                                            **UNITED STATES DISTRICT JUDGE**

---

[14] Because Newman did not move to dismiss, the Court takes no position on the sufficiency of the civil-conspiracy pleading as to Newman.