**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LYNNANN VOORHEES**, <br><br> Plaintiff, <br><br> v. <br><br> **INDU TOLIA,** *et al.*, <br><br> Defendants. | Civil Action No. 16-8208 (ZNQ) (LHG) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by Defendants Indu Tolia and Care LLC (collectively, "Defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure ("the Motion", ECF No. 86). Defendants filed a Brief in Support of their Motion ("Moving Br.", ECF No. 86-2) and a Statement of Undisputed Material Facts ("Defs' SUMF", ECF No. 86-1). Plaintiff Lynnann Voorhees ("Plaintiff") filed a Brief in Opposition to the Defendants' Motion ("Opp'n Br.", ECF No. 96), along with a Statement of Material Facts In Dispute ("Pl.'s SMFID", ECF No. 96-1). Defendants filed a Reply ("Reply Br.", ECF No. 99). Plaintiff also filed a Sur-reply ("Sur-reply", ECF No. 100).[1]

  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendants' Motion for Summary Judgment.

---

[1] Plaintiff filed a request and a proposed sur-reply, which the Court now grants. Her sur-reply will therefore be considered.

1

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. The Parties

*Pro se* Plaintiff Lynnann Voorhees ("Plaintiff") is a developer and distributor/supplier for Augmented Reality for Education software services ("AR"). (Am. Compl. ¶ 14, ECF No. 39.) Plaintiff filed this suit alleging that five defendants[2] caused irreparable harm as well as damages exceeding $2,915,000.00 for the alleged misappropriation of trade secrets related to Plaintiff's business dealings with Defendant Indu Tolia ("Tolia"), Defendant Adam Newman, and the corporate entities that the parties created. (Am. Compl. ¶¶ 1, 73.) Plaintiff alleges that Tolia misappropriated Plaintiff's intellectual property to form a competing company, Defendant Care LLC ("Care"). (*Id.* ¶¶ 14, 65.) Tolia founded Care. (*Id.* ¶ 9.)

### B. Procedural History

This action commenced on November 3, 2016, when Plaintiff filed her original Complaint. (ECF No. 1.) After Defendants filed a Motion to Dismiss (ECF No. 17), the Court dismissed the first Complaint in its entirety. (ECF Nos. 24, 25.) The Third Circuit, however, vacated the dismissal order. (ECF No. 32.) Plaintiff filed an Amended Complaint on May 24, 2019. (ECF No. 39.) Tolia and Care moved to dismiss the Amended Complaint on July 22, 2019. (ECF No. 43.) The Court granted Defendants' Motion to Dismiss as to Counts One, Three, Four, Seven, and Ten. (ECF No. 48). The remaining Counts Two (breach of contract), Five (conversion), Six (trespass to chattels), Eight (unfair competition), and Nine (breach of implied covenant of good faith & fair dealing) are the subjects of the instant summary judgment motion.

---

[2] As set forth above, the Motion is brought only by Tolia and Care.

C.  **Undisputed Facts**[3]

The Court has found the following facts to be relevant and undisputed:

Plaintiff formed Pear Enterprises, Inc. (pled as "Pear LLC", hereinafter "Pear") in 2011 as a Pennsylvania general corporation with a stated purpose of: "Website to Facilitate Ecommerce Solutions & Interactive Shopping Online." (Def's SUMF ¶ 21.) Pear has no listed assets and has one estimated employee, Plaintiff; and Pear never had any revenue from sales of products, having never filed a corporate tax return with the IRS. (*Id.* ¶¶ 21, 24.)

Tolia has over 20 years of experience in the technology and holds a bachelor's degree in computer science and engineering. (*Id.* ¶ 26.) Plaintiff met Tolia at an AR industry networking event in New York City in 2013. (*Id.* ¶ 27.) Shortly after meeting her, Plaintiff made Tolia the vice president of Pear. (*Id.* ¶ 28.) On September 27, 2013, Plaintiff, on behalf of Pear, asked Tolia to sign a non-disclosure agreement ("NDA") to protect:

> 1.  Technical information, including functional and technical specifications, designs, drawings, analysis, research , processes, computer programs, methods, ideas, "know how" and the like;
> 2.  Business information, including sales and marketing research, materials, plans, strategies, accounting and financial information, product, customers, vendors, suppliers, and distributors information, personnel records, and the like;
> 3.  Other proprietary information expressly designated by the PEAR as confidential; by the nature of the circumstances surrounding the disclosure ought to be treated as proprietary and confidential; or by the nature of the information disclosed a reasonable person ought to conclude that the information is confidential;

---

[3] Plaintiff attaches as exhibits a host of documents in support of her Statement of Material Facts in Dispute and her opposition to the Motion. (*See* ECF Nos. 96-2–96-20; Reply Br. at 4.) Defendants assert that Exhibits 1–2, 4–6, 8, 11–15, 17–19, ECF Nos. 96-2–96-3, 96-5–96-7, 96-9, 96-12–96-16, 96-18–96-20, should not be considered by the Court because they were not produced in discovery and Defendants pose various arguments regarding the Exhibits' admissibility. Plaintiff maintains that they were in fact turned over to opposing counsel in discovery. (Sur-reply at 2–3.) In the absence of a proper motion to strike the exhibits from Defendants, and in light of Plaintiff's status as both a pro se party and the nonmovant on the current Motion, the Court has reviewed Plaintiff's exhibits. Based on its review, the Court finds that exhibits are not relevant to the issues presented by the Motion for Summary Judgment. The Court therefore need not decide whether they are properly before it on this Motion.

3

> 4. Any documents or information provided by PEAR arising out of or relating, directly or indirectly, to the Proposed Transaction ([defined within]); and
> 5. Any other documents, information or things that have value to PEAR and its business or which might reasonably be characterized as confidential or proprietary.[4]

(NDA, ECF No. 18-3 at 1–2[5]; Am. Compl. ¶ 24.) Tolia signed the NDA. (Def's SUMF. ¶ 31.)

On December 29, 2013, Tolia and Plaintiff, along with Defendant Newman then co-founded a new company, Virtuality LLC ("Virtuality"). (*Id.* ¶ 34; Am. Compl. ¶ 21.) Plaintiff sold 100% of her ownership interest in Virtuality to Tolia for $100.[6] (Def's SUMF. ¶ 37; Jan. 29, 2014 Stock Surrender Agreement, ECF No. 87.) On February 14, 2014, Plaintiff became an at-will employee of Virtuality with an annual salary of $50,000 and a 5% company profit share. (Def's SUMF ¶¶ 38, 43; Plf's SMFID at 16; Employment Agreement, ECF No. 88.) The terms of Plaintiff's employment agreement with Virtuality (the "Employment Agreement") provide that Plaintiff agreed to

> "devote her full time, energy and skill to the performance of the services in which [Virtuality] is engaged, at such time and place as [Virtuality] may direct. [Plaintiff] shall not undertake, either has owner, director, shareholder, employee or otherwise, the performance of services for compensation (actual or expected) for any other entity without the express written consent of [Virtuality] or the Board of Directors."

(*Id.* ¶ 44; Employment Agreement at 2 §5(b).)

---

[4] Defendants summarized the items/information the NDA sought to protect in their SUMF: "certain business methods, models, ideas, specifications, designs, 'know how' and other information developed by PEAR and which PEAR has an interest in protecting." (Def's SUMF. ¶ 29.) While the Court finds this adequately summarizes the information Plaintiff sought to protect, Plaintiff nonetheless disputed Defendant's summary and stated "[t]he NDA states much more than Defendants suggest. Plaintiff request [sic] the court to review the NDA." (Plf's SMFID at 13.) To avoid confusion, the Court here includes the entirety of the information/material listed in the NDA.

[5] The NDA lacks page numbers, and was included in a bundle of exhibits to Plaintiff's Cross-Motion. (ECF No. 18-3.) Accordingly, the Court assigned its own page numbers and will reference the first page of Exhibit 5 to ECF No. 18-3 as page 1.

[6] Plaintiff claims she was coerced into selling her shares by Defendants. (Plf's SMFID at 16.) However, the Court has already considered and rejected this argument when it dismissed Count Three (Fraud) of the Amended Complaint. (*See* ECF No. 47.)

Further, by signing the Employment Agreement, Plaintiff represented that she had "not brought and will not bring with her to [Virtuality], or use in the performance of her responsibilities at [Virtuality], any materials or documents of present or former employer or customer that are not generally available to the public, unless she has obtained written authorization for their possession and use." (Def's SUMF ¶ 44; Employment Agreement at 3.) With respect to intellectual property, the Employment Agreement contains the following two relevant terms:

> **13. Disclosure of Innovations**. Plaintiff agrees to disclose in writing to [Virtuality] all inventions, improvements and other innovations of any kind that she may make, conceive, develop or reduce to practice, alone or jointly with others, during the term of my employment with [Virtuality], whether made, conceived, developed or reduced to practice prior to the date hereof or hereafter, whether or not they are related to my work for [Virtuality] and whether or not they are eligible for patent, copyright, trademark, trade secret or other legal protection ("Innovations").
>
> **14. Assignment of Ownership Innovations**. [Plaintiff] agrees that all Innovations will be the sole and exclusive property of [Virtuality] and/or Its customers, and she hereby agrees to assign all of her rights, title or interest in the Innovations and in all related patents, copyrights, trademarks, trade secrets, rights of priority and other proprietary rights to [Virtuality] and/or its Customers....[Plaintiff] understands that she retains no rights whatsoever to the Innovations.

(Def's SUMF ¶ 44, Employment Agreement at 6.) During Virtuality's brief existence, it never generated any positive revenue, and as of February 14, 2014, the date Plaintiff signed the Employment Agreement, it had no assets.[7] (Def's SUMF ¶ 39.)

---

[7] Plaintiff indicates that Virtuality "did have assets in the form of investment," but fails to cite to any evidence in the record. (Plf's SMFID at 17.) Accordingly, the Court will reject Plaintiff's dispute pursuant to Rule 56(c)(1) and will accept Defendant's statement of fact here as undisputed for purposes of this Motion. Plaintiff also indicates that Virtuality possessed an asset in the form of the contract with "Let's Go Learn." (*Id*.) A thorough review of the contract, attached as Exhibit 9 to Plaintiff's Statement of Material Facts in Dispute, demonstrates that the contract was merely an "Authorized Reseller Agreement." (See ECF No. 96-10.) Nothing within the contract indicates that it allocates or represents an "asset" to Virtuality.

On or about February 20, 2014, Tolia informed Plaintiff that Defendant Newman had stolen company funds to purchase a personal vehicle. (*Id*. ¶ 50; Am. Compl. ¶ 46.) Tolia also informed Plaintiff that she was leaving Virtuality, and dissolved the company. (Def's SUMF ¶ 52, Am. Compl. ¶ 46.)

On that same day, Tolia created her new company Care, which was registered with the State of New Jersey on February 28, 2014. (Def's SUMF ¶ 53.) After Virtuality dissolved, Tolia gave Plaintiff an opportunity to continue working for Care, as an independent contractor. (*Id*. ¶ 55.)

Tolia was ultimately unsuccessful and could not make Care into a profitable business, having only generated $15,300 in combined gross revenue for all AR education products sold. (*Id*. ¶ 60.)[8]

## II.     **JURISDICTION**

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because the parties are citizens of diverse states and the amount in controversy exceeds the sum of $75,000.00.[9]

---

[8] Defendants claim that any work product provided by Plaintiff to Care was its property as "work for hire" because Plaintiff was a contractor for Care. (Defs' SUMF ¶ 56.) They assert Care paid Plaintiff $8,500 in March of 2014 and around $4,000 in April of 2014. (*Id*.) Defendants' only support for their assertion is an affidavit from Tolia. Plaintiff, however, denies that she was ever a contractor for Care or ever paid by Care. (Plf's SMFID at 23.) Plaintiff provides no proof beyond her statement. Still, because Plaintiff signed her responsive statement under penalty of perjury, essentially rendering her statement a testimonial affidavit, the Court finds that it is presented with competing witness statements, and concludes that Defendants have therefore not satisfied their burden to establish an absence of a genuine issue of fact as to their defense.

[9] Defendants argue that there is a valid forum-selection clause which was not considered by the Honorable Brian R. Martinotti, U.S.D.J. is his opinion granting in part and dismissing in part the Amended Complaint. (Moving Br. at 8; ECF No. 47.) The Court's opinion, however, did in fact recognize and consider the forum selection clause, but concluded that under the doctrine of forum non-conveniens, the U.S. District Court for the District of New Jersey was a valid forum to pursue the instant action. (*See* ECF No. 47 at n.7.) Accordingly, the Court rejects Defendants' arguments that the NDA's forum-selection clause strips this Court of subject matter jurisdiction. (ECF No. 47.)

## III. LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

## IV. DISCUSSION

### A. BREACH OF CONTRACT CLAIM (COUNT TWO)

*1. Damages*

Defendants first argue that based on Plaintiff's answers to interrogatories and requests for admissions, Plaintiff has no proof of measurable damages. (Moving Br. at 8–9.[10])

In New Jersey,[11] however, proof of actual damages is not necessary to survive summary judgment on a breach of contract claim: "the general rule is that whenever there is a breach of contract, or an invasion of a legal right, the law ordinarily infers that damage ensued, and, in the absence of actual damages, the law vindicates the right by awarding nominal damages." *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 45–46 (1984) (internal citations omitted) (citing *Spiegel v. Evergreen Cemetery Co.,* 117 N.J.L. 90, 96–97 (1936) ("It is the established rule in this state that wherever there is a breach of contract, or the invasion of a legal right, the law ordinarily infers that damage has ensued. And, in the absence of actual loss, the law vindicates the right by awarding nominal damages. The injury imports damage.")). The New Jersey Supreme Court has distinguished a claim for breach of contract—a cause of action that does not require proof of actual damages—from the tort of negligence, which requires showing both "a breach of duty and resulting damage to prevail." *Nappe*, 97 N.J. at 45–46. Similarly, the Third Circuit has found that in "a breach of contract [claim] the injured party is entitled to nominal damages even when its proof fails to show substantial loss." *Norwood Lumber Corp. v. McKean*, 153 F.2d 753, 755 (3d Cir.1946) (citing Restatement (Second) of Contracts § 346); *Coca–Cola Bottling Co. of Elizabethtown, Inc. v. Coca–Cola Co.*, 988 F.2d 386, 409 (3d Cir. 1993).

---

[10] Defendants' Moving Brief lacks page numbers. Accordingly, the Court will use the ECF assigned page numbers when referencing the Moving Brief.

[11] Federal courts apply state substantive law when sitting pursuant to diversity jurisdiction. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

8

Here, given that Plaintiff need not prove actual damages to survive summary judgment on her breach of contract claim, the Court finds Defendants' argument unpersuasive, and will not grant summary judgment on this ground.

*2. The Scope of the Rights Conveyed by the Employment Agreement*

The Employment Agreement between Plaintiff and Virtuality figures prominently in the current Motion. Defendants construe it as conveying to them the very intellectual property rights that Plaintiff is attempting to assert in this case. (Moving Br. at 10) ("Thus, any creation, concept or idea that plaintiff may have been in possession of as of Feb. 1, 2014 then became the sole property of Virtuality LLC, a company owned in totality by defendants Newman and Ms Tolia. Ms. Tolia was therefore the rightful owner of whatever inventions, ideas, concepts, or 'know how' that plaintiff previously created, at least as far as they touch and concern Virtuality's stated business purposes.")

Stated simply, Defendants' construction is flawed. The Employment Agreement is relatively clear.

> **13. Disclosure of Innovations**. Plaintiff agrees to disclose in writing to [Virtuality] all inventions, improvements and other innovations of any kind that she may make, conceive, develop or reduce to practice, alone or jointly with others, ***during the term of my employment with [Virtuality]***, whether made, conceived, developed or reduced to practice prior to the date hereof or hereafter, whether or not they are related to my work for [Virtuality] and whether or not they are eligible for patent, copyright, trademark, trade secret or other legal protection ("Innovations").
>
> **14. Assignment of Ownership Innovations**. [Plaintiff] agrees that all Innovations will be the sole and exclusive property of [Virtuality] and/or Its customers, and she hereby agrees to assign all of her rights, title or interest in the Innovations and in all related patents, copyrights, trademarks, trade secrets, rights of priority and other proprietary rights to [Virtuality] and/or its

9

> Customers....[Plaintiff] understands that she retains no rights whatsoever to the Innovations.

(Employment Agreement at 6) (emphasis added). Paragraph 14 does convey to Virtuality sole and exclusive rights as to certain "Innovations." *Id*. Paragraph 13, however, defines these Innovations as those that came about "during the term of [Plaintiff's] employment with Virtuality." Defendants' strained interpretation focuses on the phrase "prior to the date hereof or hereafter" in Paragraph 13 to the improper exclusion of the boundary set, in the earlier phrase, to the term of Plaintiff's employment. On its face, therefore, the Employment Agreement does not convey rights to any intellectual property in Plaintiff's possession prior to her employment with Virtuality, as Defendants contend.[12]

The Court's more limited view of the Employment Agreement has two effects on the current Motion. First, it moots Plaintiff's argument that the Agreement is invalid as an impermissible "holdover agreement' under New Jersey law. This is because, construed correctly, the Agreement does not extend beyond her employment. *See Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 627 (1988). Second, it moots Defendants' contention that the Employment Agreement supersedes the terms of the NDA between Talia and Pear, because there is no overlap in the terms of the two agreements.

   3. *Whether Defendants Breached the NDA.*[13]

Count Two of the Amended Complaint alleges that Defendants breached their obligations under the NDA by utilizing Plaintiff's confidential and/or trade secret information to benefit her

---

[12] By the same token, the Employment Agreement also does not convey rights to any Innovations that Plaintiff might create AFTER her termination from Virtuality.

[13] In her briefing, Plaintiff also asserts for the first time that Tolia breached a separate verbal contract by which Tolia agreed to pay Plaintiff $2000 per month for living expenses. Because the Amended Complaint fails to plead a breach of this agreement, or even its existence, the Court sets aside Plaintiff's assertions for the purposes of this Motion. (See generally Am. Compl.)

10

business competitors. (Am. Compl. ¶ 79.) Defendants argue that Plaintiff failed to show any evidence that Defendants breached the NDA, and given that the Court already determined that there was no value to whatever property plaintiff may have possessed, it would be impossible for Defendants to have breached the NDA. (Reply Br. at 13.[14]) Plaintiff argues that Tolia conceded that she breached the NDA by admitting that she used Plaintiff's content for Virtuality and later for Care. (Opp'n Br. at 12.) In reply, Defendants reiterate that it would be impossible for Plaintiff to demonstrate that Defendants breached the NDA because there was no value to "whatever secrets or confidential information Plaintiff may have possessed." (Reply Br. at 13.).

First, the Court rejects Defendants' argument that they could not have breached the NDA because the property Defendants allegedly took has no value. As the Court has already concluded, Plaintiff need not prove damages to survive summary judgment.

Second, the full text of the paragraph from Tolia's certification that Plaintiff cites as proof of a breach reads as follows:

> 27. I never colluded with Adam to harm Lynn or Pear Enterprises, and I never took anything from Lynn, period. Although we did use *some* of her content for Virtuality and later for CARE, Lynn was more than fairly compensated for her contributions.

(Certification of Indu Tolia attached to Moving Brief ("Tolia Cert."), ECF 86-4 ¶ 27) (emphasis in original). Tolia's statement is vague as to the "content" that was used at either Virtuality or Care. A later statement by Tolia in the same certification, however, provides more clarity:

> 35. CARE never used any unauthorized content on its website, in promotional materials, or anywhere else. To the extent that Lynn may have contributed to some of CARE's content, that was work for hire—she was paid for that work either in accordance with her employment agreement with Virtuality, or as an independent contractor working for CARE. Further, the employment agreement

---

[14] Defendants' Reply Brief lacks page numbers. (See ECF No. 99.) Accordingly, the Court will reference the ECF-assigned page numbers when citing to their reply.

11

> specifically states that any content Lynn created became the sole property of the company.

(Tolia Cert. ¶ 35.) From this statement, it is clear that Tolia is referring to Defendants' use of content provided by Plaintiff during her employment with Virtuality, and content she provided as a contractor while working for Care. Use of that content would not breach the NDA. Thus, read in context, the Court finds that Tolia's statement in paragraph 27 fails to raise a genuine issue of material fact with respect to Defendants' improper use of Plaintiff's intellectual property, thereby breaching the NDA. Nor does Plaintiff identify the intellectual property, much less evidence that property, that she contends Defendants misappropriated.[15] Insofar as Tolia's statement at paragraph 27 is the sole evidence Plaintiff cites in support of her claim for breach of contract, the Court concludes that Defendants are entitled to summary judgment as to Count 2.

**B.  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT 9)**

Count Nine of the Amended Complaint alleges that Defendants violated the implied covenant of good faith and fair dealing in the parties' dealings. (Am. Compl. ¶ 123.)

The implied covenant of good faith and fair dealing is inherent to a contract. *Connecticut Gen. Life Ins. Co. v. Roseland Ambulatory Surgery Ctr.*, Civ. No. 12-5941, 2014 WL 2601972, at *4–5 (D.N.J. June 11, 2014). Breach of the implied covenant of good faith and fair dealing is not a free-standing cause of action; the covenant is implied by a contract. *Luongo v. Village Supermarket, Inc.*, 261 F. Supp. 3d 520, 532 (D.N.J. 2017). To determine whether there has been a breach of this implied covenant, a court must consider the express language of the contract as

---

[15] Defendants argue in their briefing that Plaintiff identified a particular piece of software allegedly stolen from Defendants in her answers to interrogatories. (Moving Br. at 13.) Defendants argue that Plaintiff admitted that the identified software was not her own, but rather property of a third party. (*Id*.) Defendants, however, fail to attach Plaintiff's answers to interrogatories to their moving brief. A thorough review of the docket reveals they are nowhere in the record. Defendants' unsupported argument fails to carry their burden on this Motion, and therefore, the Court sets it aside.

well as any course of dealing between the parties. *Cargill Global Trading v. Applied Development Co.*, 706 F. Supp. 2d 563, 579–80 (D.N.J. 2010) (citing 23 Richard A. Lord, Williston on Contracts § 63:22 (4th ed, 2009)).

To establish breach of the implied covenant of good faith and fair dealing, "a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages." *Luongo v. Village Supermarket, Inc.*, 261 F. Supp. 3d 520, 531–32 (D.N.J. 2017). A defendant "can be liable for breach of the implied covenant even where it has not 'violat[ed] an express term of a contract.'" *Id*. at 580 (D.N.J. 2010) (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997)). "But if a defendant acts in accordance with an express contractual term, he cannot be liable for breach of the implied covenant." *Id*. citing *Fields v. Thompson Printing Co*. 363 F. 3d 259, 271–72 (3d Cir. 2004)).

Plaintiff's claim that Defendants violated the implied covenant of good faith and fair dealing is predicated on the fact that through their actions of using Plaintiff's Innovations, including theft of processes, know how, and wrongful retention of trade secrets and product concepts, Defendants secretly conspired to assist a competing business while still in partnership and venturing with Plaintiff. (Am. Compl. ¶ 123.)

Tolia denies misappropriating Plaintiff's intellectual property, and asserts that she formed Care using her own vision and her own ideas. (Tolia Cert. ¶ 23.) In response, Plaintiff argues this is "entirely not plausible or even remotely true." (Opp'n Br. at 27.) Plaintiff, however, provides no evidence to support her argument. Plaintiff merely asserts that Tolia provided no proof that the website was created with her own ideas "because the fact is the Defendant had no prior experience

or developments of ideas, products, [or] services she created. (*Id*. at 28.) Additionally, Plaintiff fails to specify the "ideas" she claims that Defendants used to violate the implied covenant. Plaintiff further fails to identify the rights or benefits under the contract of which Defendants allegedly deprived her. As such, there is no genuine issue of material fact as to whether Tolia acted in bad faith with the purpose of depriving Plaintiff of rights or benefits under the contract. Accordingly, nor is there a genuine issue of material fact as to whether Defendants violated the implied covenant of good faith and fair dealing. Therefore, the Court will GRANT summary judgment as to Count Nine.

### C. CONVERSION AND TRESPASS TO CHATTEL (COUNTS FIVE & SIX)

Counts Five and Six of the Amended Complaint are predicated on allegations that Defendants used Plaintiff's "non-trade secret proprietary information" for their own benefit. (Am. Compl. ¶¶ 91, 97, 102.) Plaintiff alleges, in Counts Five and Six, that she has a right to posses her non-trade secret proprietary information and Defendants willfully interfered with her ownership and possessory rights to such property. (*Id*. ¶¶ 97, 98, 102, 103.)

Defendants argue that Plaintiff failed to identify whether the property rights have value to survive a trespass to chattel or conversion claim. (Moving Br. at 13.) Defendants specifically assert that even if Tolia had stolen ". . .knowledge from [P]laintiff, it could not have been that valuable because Care LLC was never a cash flow positive business was it was in the AR for education industry." (*Id*. at 14.)

In opposition, Plaintiff argues that she has demonstrated that she sustained damages due to Defendants' misappropriation of her proprietary information. (Opp'n Br. at 43.) Plaintiff argues that the Let's Go Learn contract was worth millions of dollars. (*Id*. at 15.) Plaintiff also asserts that Pear had established developer partnerships with multiple other companies and Defendants' interference halted Plaintiff's "startup momentum." (*Id*. at 17.) Plaintiff additionally argues that

14

her "knowledge and Know how has value as an average person would not have been able to recognize this into the formation" of her inventions and business model. (*Id*. at 17–18.) [16]

Defendants argue in reply that even if they had stolen or misappropriated any information from Plaintiff, it would not have been worth anything because Care was never a cash flow positive business when it was in the AR for education industry. (Reply Br. at 15.)

The companion torts of conversion and trespass to chattels boil down to wrongful interference with an individual's possession or use of their own property. *Barrett Financial of North Jersey, LLC v. Creative Financial Group of New Jersey*, Civ. No. 13-5621, 2018 WL 3546196, at *8 (D.N.J. July 24, 2018).

Plaintiff, here, has however failed to identify the property with which she claims Defendants interfered. As noted above, the Employment Agreement indicates that she agreed to forfeit property rights of any Innovations created during her employment with Virtuality. (See Employment Agreement §§ 13, 14). Tolia's certification attests that while Care used some of Plaintiff's content, the content used was created during Plaintiff's employment with Virtuality and/or her tenure as a contractor with Care. (Tolia Cert. ¶¶ 27, 35.) While Plaintiff claims Defendants interfered with her "property" and thus are liable for conversion and/or trespass to chattels, Plaintiff does not identify the alleged stolen property, much less provide evidence of its existence.

Plaintiff additionally fails to provide any evidence to support her charge that her property was allegedly taken. Plaintiff merely asserts that Defendants' actions deprived her of her exclusive use and possession of her property. (Opp'n Br. at 43.) Plaintiff thus fails her obligation as the

---

[16] In her briefing, Plaintiff cites Defendants' patent application that she claims used Pear software. (Opp'n Br. at 20.) The Court sets this argument aside because the Amended Complaint fails to allege that Defendant's patent application interfered with Plaintiff's property.

nonmoving party to make a showing sufficient to establish the existence of an element essential to her case. Accordingly, there is no genuine issue of material fact. *Katz*, 972 F.2d at 55. [17]. Summary judgment will therefore be GRANTED as to Counts Five and Six.

### D.   UNFAIR COMPETITION (COUNT EIGHT)

Count Eight of the Amended Complaint is predicated on allegations that Defendants stole non-trade secret proprietary information for their own business purposes. (Am. Compl. ¶ 119.) Defendants argue that the property claimed by Plaintiff in the Amended Complaint was not hers and therefore, she cannot succeed on an unfair competition claim. (Moving Br. at 16.) Plaintiff, in opposition, argues that the unfair competition claim was already determined by the Court to be non-dismissible.[18] (Opp'n Br. at 45.) Plaintiff asserts that Defendants used Plaintiff's property to their benefit. (*Id*. at 46.) Defendants reiterate in reply that Plaintiff failed, again, in her opposition papers to provide any evidence of unfair competition or trade practices. (Reply Br. at 15.)

The common law business tort of unfair competition is generally defined as the "'misappropriation of one's property by another . . . which has some sort of commercial or pecuniary value.'" *ADP, LLC v. Kusins*, 460 N.J. Super. 368, 414 (App. Div. 2019) (quoting *Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 600 (D.N.J. 2000)).

Plaintiff claims that Defendants stole non-trade secret proprietary information and used it for their own business venture. (Am. Compl. ¶ 119.) However, as the Court has already

---

[17] Given its conclusion with respect to Plaintiff's insufficient showing, the Court does not reach Defendants' argument that Plaintiff was also obligated to show that the alleged property has value.

[18] In its prior decision, the Court concluded that Plaintiff had sufficiently pled a claim for common law unfair competition to survive a motion to dismiss. (See ECF No. 47 at 26.) On the present Motion for Summary Judgment, the inquiry is a more searching one: whether Plaintiff has adduced sufficient evidence to raise a genuine issue of material fact as to her claim.

determined, Plaintiff has failed to identify this property or to come forward with supporting evidence. (*See* § C, *infra*.) Therefore, summary judgment will be GRANTED as to Count Eight.[19]

## V.     CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion for Summary Judgment. An appropriate Order will follow.

Date: **December 31, 2022**

s/ Zahid N. Quraishi<br>
**ZAHID N. QURAISHI**<br>
**UNITED STATES DISTRICT JUDGE**

---

[19] The Court does not address Plaintiff's assertion that Defendants interfered with Plaintiff's contract with "Let's Go Learn." (Plf's SMFID at 7 ("The Plaintiff's startup PEAR would have gained work/client for the Augmented Reality content creation for all of the Let's Go Learn contract. . .).) The Amended Complaint pleads that Defendant Newman announced, via Defendant Augthat, on a Facebook page, of his partnering with "Let's Go Learn." (Am. Compl. ¶ 63.) The unfair competition claim concerning the "Let's Go Learn" contract is therefore plead against Defendant Newman and not the moving Defendants here.